## JAMES MERRITT v. THE STATE.

1. ADULTERY — ACCOMPLICE TESTIMONY.— In the trial of a man for adultery, the testimony of his paramour as a State's witness is that of an accomplice or *particeps criminis*, and will not support his conviction unless corroborated by other evidence tending to connect him with the offense.

2. SAME.—See evidence *held* insufficient in a trial for adultery to corroborate the testimony of the defendant's paramour.

APPEAL from the District Court of Comanche. Tried below before the Hon. T. L. HUTCHISON.

The indictment charged the appellant with adultery with Barbara Edwards, his sister-in-law. His trial resulted in a verdict of guilty, and his punishment was assessed at a fine of $150.

Mrs. Victoria Edwards, the mother of the prosecutrix, and mother-in-law of the defendant, testified for the State that she was present and witnessed the marriage of the defendant and her eldest daughter, Mary, previous to April, 1879, since which time the defendant and her daughter Mary, so married, have been living together as man and wife. On the 10th day of March, 1879, her daughter Barbara, the prosecutrix, gave birth to a child. The first the witness knew of any derangement of Barbara's health was in January, 1879, when she learned of her pregnancy. The defendant at that time lived about a half mile from the witness' house. When the witness saw him after learning of her daughter's pregnancy, she informed him of it, and told him that she was going to take the girl before a justice of the peace and make her disclose under oath the paternity of the child. She told him also that the father ought to support the child. The defendant replied that he thought, too, that the father should provide for the child's support. The witness then upbraided and abused the defendant as the author of her daughter's pregnancy. He did not deny the charge, but merely remarked "I guess you think I am the father of the child."

The defendant afterwards came to the field where the witness and her children were at work, very angry, and by cursing and abusing witness, frightened her and her children very much. He was frequently at the house of the witness for the ten months preceding this difficulty. He always brought his wife with him, and when he

stayed all night he and his wife always slept together so far as witness knew. They always went to bed together. There was but one room to the house, and all the family slept in that room.

Cross-examined, the witness stated that she did not remember whether or not she accused the defendant of being the father of the child, nor whether or not he denied it, but when she abused him he "made light of her." She admitted that other young men had associated with the prosecutrix during the year 1879; that one of them had been about the house some, and came home with Barbara on January 4, 1879. Witness did not know his present whereabouts. Another one had also been about witness' house, but if he ever slept with Barbara, the witness did not know it.

The State having declined to prosecute Barbara Edwards, she was introduced and testified to the effect that she gave birth to a child on the 10th day of March, 1879, and that the defendant was its father. The defendant and herself had connection four or five times, each time at the house of the witness, and at night.

On cross-examination she stated that on each occasion the defendant forced her. He attacked her when she was asleep, and she could not help herself. She was afraid to call out. At these times she was sleeping in bed with her brother, and in the same room with her mother and sister, the defendant's wife. The force used was putting his hand over her mouth. The first time the defendant forced and had intercourse with the witness was sometime about the last of April, 1879; the next time about the first of May following; the third time about the 15th of June following, and the fourth time a night or two later. He never had intercourse with her after June, 1879.

The witness did not disclose these facts to any one until January, 1880, when her pregnancy became apparent. She visited the defendant's house frequently after June,

1879, and was there a few days before her pregnancy was discovered. The defendant had no connection with her subsequent to June, 1879. He quit of his own accord — the witness did not know why. He always had connection with her at her house, at night on the bed. The defendant always brought his wife with him, and the household all slept in the same room. The child died and the witness never saw it. The only force used was by putting the hand over the mouth of the witness.

No brief for the appellant.

*H. Chilton*, Assistant Attorney General, for the State.

WHITE, P. J. The offense in this case, to wit, "adultery," is charged to have been committed on the 20th day of April, 1879, and at divers other times before and after that time. The indictment was filed the 18th day of June, 1879, before our Revised Penal Code went into operation. On the trial the judge charged the jury the law in accordance with the definition of the offense as given in art. 333, Penal Code, instead of the law as in force when the offense was committed. Pasch. Dig. art. 2024. Under previous decisions, however, there is really but little if any difference in the construction placed upon the old law and the statute as at present existing. *Swancoat* v. *State*, 4 Texas Ct. App. 105; *Parks* v. *State*, 4 Texas Ct. App. 134; *Merrill* v. *State*, 5 Texas Ct. App. 447.

But two witnesses were examined, the mother of the girl with whom the adultery was alleged to have been committed, and the girl herself. The girl, who was in law a *particeps criminis*, as such should have been corroborated by other testimony tending to establish the guilt of defendant. In our opinion this was not sufficiently done. The girl's mother testified to nothing corroborative in the slightest degree, save that defendant stayed at her house

several times with his wife, who was also her daughter; that all the parties slept in the same room — there being but one room to the house; defendant and his wife always going to bed together; and that the girl became pregnant and had a child.   On the other hand she also avers that a Mr. Morning, who had since left the country, and Bud Lambert had both been about her house "some during the year 1879,"— though she did not know that either of them had ever slept with her daughter.   The girl swears positively to four or five separate and distinct occasions upon which defendant had obtained knowledge of her person,— each time at night and on her bed in which her brother was sleeping with her, and in the same room where her mother and defendant's wife, her sister, were also sleeping, and that each and every time the act was committed by force and against her consent.   The fact that the girl had been indulging in illicit commerce with some man is incontrovertibly established by the fact that a child was born of her; but that its paternity is attributable to defendant's agency, or his adulterous connection with her even, is not established by corroborative evidence, independent of her own statement, sufficient in our opinion to warrant the conclusion of his guilt to a moral certainty and against any other reasonable hypothesis.

The evidence not being sufficient to support the verdict and judgment, the court below erred in not granting a new trial; and the judgment is reversed and cause remanded.

*Reversed and remanded.*